## 57544. GOSWICK v. THE STATE.

QUILLIAN, Presiding Judge.

The defendant appeals from the revocation of probation of a prior sentence for theft by deception. In the instant case he was also charged by Mr. Marvin Key with theft by deception.

Mr. Key was induced by an old acquaintance, Zane Reed, to put up $7,000 as part of the purchase price of a trailer load of carpet. Both Key and Reed had previously been engaged in the sale of carpeting. They met the ostensible seller at a truck stop. Reed introduced the seller to Key as "Ross Rayburn." After an explanation of the delivery procedure, Key left the money with them and returned to the hospital where his wife was undergoing surgery for a suspected malignancy. Mr. Rayburn, Mr. Reed, and the money disappeared and no carpeting was forthcoming. Key went to the manufacturer and met the real Ross Rayburn who was not the man who sold the carpeting. Reed was eventually located and following his refusal to repay the money, advised Mr. Key — "[y]ou could get your legs broke or your brains blowed all over the ceiling." Key swore out a warrant for Reed.

Mr. Key was taken to Catoosa County to view six photographs of persons using similar "flimflam" schemes to determine whether one of them was the missing seller. He did not make any positive identification from those pictures. After his return to Whitfield County, where this offense occurred, he was shown two photographs. The testimony is confusing, but it appears that Mr. Key was shown two photographs on two different occasions. The first time he was shown photographs of the defendant and one Jackie Lynch. Mr. Key knew Jackie Lynch from earlier days when both of them had been involved in dealing in carpeting. The picture of the defendant had been taken 18 months before this showup. He tentatively identified the other photograph as the man he had dealt

with — but expressed some reservation. He said: "I'm 99 1/2% sure, but . . . I got to see . . . I want to see him walk." At a later date he was again shown two pictures. One was of the defendant and the other was of "Doyal Cross." Cross' photo had been shown to him earlier in the Catoosa photo showup and he had told them there that he looked like the seller but he didn't have a mustache and he had a scar, was heavier and looked older.

Because of the threat from Zane Reed, Mr. Key testified: "I figured if somebody — a number two man — would be looking for me. After what I was told on the phone, I figured things was pretty rough . . . three or four days that I would go down to the Downtowner and I'd sit in the lobby and watch my car . . . It was on a Thursday I seen [sic] David Goswick [the defendant]. He looked at the tag; he looked all around it . . . And I got a good look at him, and I'd never forget the man. So then, I went and swore a warrant out for him, 'cause I knew that that was the man."

The police officer who presented the two pictures to Mr. Key testified that the reason they showed him the defendant's photograph was that he had been told "Mr. Goswick had kept calling down to the Correctional Center trying to get Mr. Reed out." This is hearsay, but is admissible to explain the conduct and motive of the police for showing the defendant's photo to Mr. Key. Code Ann. § 38-302 (Code § 38-302).

The defendant's motion to suppress was denied and the court revoked defendant's probation. He brings this appeal. *Held:*

1. The defendant filed a motion to suppress the evidence relating to "identification testimony of Marvin Key," a witness for the state and the victim of the alleged "flimflam" scheme. A motion to suppress is statutory (Code Ann. § 27-313 (Ga. L. 1966, pp. 567, 571)) and relates only to "evidence illegally seized." Because a motion to suppress was not a part of the common law and prior to 1966 "was unknown in the law of this state" (*Reid v. State,* 129 Ga. App. 660, 661 (200 SE2d 456)), it has only such scope and jurisdiction as are contained within the statute and it would not have been error for the court to refuse to hear the motion. See *Foote v. State,* 141 Ga. App. 18 (1) (232 SE2d 366). However, the trial court heard the

motion, and content of a motion — not nomenclature, controls (*McDonald v. State,* 222 Ga. 596, 597 (151 SE2d 121)), and a question was presented on the legality of the pre-trial identification procedures. Furthermore, the state did not object to the procedure followed. Thus, although *Foote v. State,* 141 Ga. App. 18 (1), supra, involved a "pre-trial motion to suppress evidence which was directed to identification testimony of the state's witnesses," and we held defendant's identification enumeration to be without merit "since a pre-trial motion to suppress is available only to a person aggrieved by an unlawful search and seizure" our Supreme Court, in *Burrell v. State,* 239 Ga. 792 (239 SE2d 11), did not mention any procedural error where the defendant used a "motion to suppress any in-court identification" based upon an allegedly "tainted pre-trial photographic display." Thus, we will consider the merit of the enumeration alleging the pre-trial identification was "impermissibly suggestive" and could have resulted in "a very substantial likelihood of irreparable misidentification."

2. Although the practice of showing suspects, and photos of suspects, singly to a witness for purposes of identification has been widely condemned, a claimed violation of due process of law in the conduct of pre-trial confrontations depends on the totality of the circumstances. Stovall v. Denno, 388 U. S. 293, 302 (87 SC 1967, 18 LE2d 1199). The fact of a one-on-one showup, without more, does not necessarily violate due process. Neil v. Biggers, 409 U. S. 188, 198 (93 SC 375, 34 LE2d 401). However, the U. S. Supreme Court stated, apparently with approval, that "the ALI Model Code of Pre-Arraignment Procedure §§ 160.1 and 160.2 (1975) . . . frowns upon the use of a showup or the display of only a single photograph." Manson v. Brathwaite, 432 U. S. 98, 111 (97 SC 2243, 53 LE2d 140). Nevertheless, they noted that the fact it did occur should not result in a "per se" exclusionary rule, for "inflexible rules of exclusion, that may frustrate rather than promote justice, have not been viewed recently by this Court with unlimited enthusiasm." Id. at 113. "We therefore conclude that reliability is the linchpin in determining the ad-

missibility of identification testimony for both pre and post-Stovall confrontations." Id. at 114. The court reaffirmed the test enumerated in Biggers for determining whether the procedure used was impermissibly suggestive so as to give rise to a substantial likelihood of irreparable misidentification.

Simmons v. United States, 390 U. S. 377 (88 SC 967, 19 LE2d 1247) sets forth a two-part test. The first inquiry is whether the identification procedure was impermissibly suggestive. Pretermitting the issue of whether the procedure used in the instant case was impermissibly suggestive, we turn to the second part: whether there was a substantial likelihood of irreparable misidentification. We apply the test enunciated by Biggers: (1) opportunity to view the defendant at the time of the offense — Mr. Key said he observed and talked to the defendant for "twenty to thirty minutes" across a table in a "well lighted room"; (2) the witness' degree of attention — the witness observed the defendant closely enough to give a fairly accurate and complete description to the police; (3) the accuracy of the witness' prior description: from the picture of the defendant in the record, we find the description reasonably accurate; (4) level of certainty demonstrated: Mr. Key stated he was 99 1/2% sure after seeing the photograph, and completely certain after viewing the defendant observing his truck; (5) the length of time between the crime and the identification was approximately five weeks — this is not such an extensive period as might permit a witness' memory to fade.

Furthermore, our Supreme Court, in *Gravitt v. State,* 239 Ga. 709 (239 SE2d 149), found no due process violation where the witness was shown the picture of the defendant before a holdup occurred. Again in *Burrell v. State,* 239 Ga. 792, supra, officers obtained a photo of a robbery suspect from his wife and showed it to the individual who had been robbed. The court refused to suppress the in-court identification. In Manson v. Brathwaite, 432 U. S. 98, supra, one photo of the suspect was shown to the undercover police officer who identified him as the narcotics seller from whom he purchased narcotics, and the court held that under the totality of the circumstances they did not find " 'a very substantial

likelihood of irreparable misidentification.' [Cit.] Short of that point, such evidence is for the jury to weigh." Id. at 116.

Accordingly under Manson, *Gravitt,* and *Burrell,* supra, we find no merit in this enumeration.

3. Defendant contends that the trial court erred in failing to make a written statement as to the evidence relied on and the reasons for revoking the defendant's probation. Counsel is correct in citing Gagnon v. Scarpelli, 411 U. S. 778, 786 (93 SC 1756, 36 LE2d 656) requires "a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation or] parole." However, we find the trial court's order complies with the requisites of Scarpelli. It contained the facts shown in the transcript that he relied on in adjudging the defendant in violation of the terms of his probation "by committing Theft by Deception on October 2, 1978 . . ."

4. The four remaining enumerations of error address the credibility of the witness Key, and the sufficiency of the evidence to revoke the probation. Credibility is for the factfinder and only slight evidence is needed for revocation of probation. These enumerations are without merit.

*Judgment affirmed. Smith and Birdsong, JJ., concur.*

SUBMITTED APRIL 4, 1979 — DECIDED MAY 17, 1979 — REHEARING DENIED JUNE 13, 1979.

*Little & Adams, Robert B. Adams,* for appellant.
*Charles A. Pannell, Jr., District Attorney, Stephen A. Williams, Roland R. Castellanos, Assistant District Attorneys,* for appellee.