## 60999. BARRON v. THE STATE.

POPE, Judge.

Kenneth Roger Barron appeals from his conviction of two counts of armed robbery and concurrent life sentences on each charge. We find no reversible error and affirm.

The victims of the robbery were Jimmy Nichols and his aunt, Pauline Moses, with whom he resided. On January 8, 1980 Nichols was walking home from a neighborhood tavern at approximately 2:00 a.m. A green Camaro containing two men and a woman stopped and a tall, blonde man with a pistol (later identified as appellant) and a short man got out. Appellant struck Nichols and told him to take them to his aunt's house or they would "blow [his] G. D. brains out." When Mrs. Moses opened the door the two men threw her on the bed, put a pillow over her head and beat her, breaking her glasses. Barron threatened Mrs. Moses, stating "he was going to kill [her] and shoot [her] down [her] throat or in [her] brain." Nichols was pistol whipped by Barron, who also tried to gouge out his eyes with the pistol barrel. Nichols' billfold containing about $30 was taken as well as two rings and between $150 and $175 from Mrs. Moses.

At approximately 10:00 p.m. that same date two plain clothes police officers in an unmarked patrol car were driving about 35 m.p.h. on a rain-slick city street when an automobile came up on their rear "real fast," having to swerve to avoid hitting the police vehicle. The police officers drove about three and a half blocks with the other car following so close on their tailgate they "couldn't see his headlights." Stopped by a red light, one of the officers got out and approached the two men in the following car, shining his flashlight on his badge which he held in his hand. The driver's "eyes were real glazy and were red and he was moving real slow, appeared to be like he was under drugs or alcohol or something in his bloodstream," and the officer asked him to step out of his car. While frisking the driver, the officer felt a bulge in his pocket and removed a prescription bottle of pills with no label. The officer then "glanced back and saw [the man later identified as] Barron coming out of his coat with a nickel-plated revolver." Barron grabbed the officer and stuck the gun in his face, the officer scuffled with Barron to get the weapon away from him, and in the ensuing struggle Barron was shot in the back left shoulder by his own pistol. Both men were arrested.

Nichols had contacted the police and on January 10 he and Mrs. Moses were requested to come to headquarters for a photographic display. Because he had been involved in some other robberies in the same neighborhood, Barron's photograph was included in a group of ten men with long, straggly blonde hair and mustaches and/or beards.

All of the names, dates and identification numbers on these photographs had been obscured by tape. Two tables were placed together and Nichols and Moses were seated at either end about six to eight feet apart. Moses viewed the photographs first and Nichols was admonished not to look at the pictures until Moses was finished. Both Moses and Nichols picked Barron's picture as the assailant, each testifying at trial that neither was able to see which photograph the other picked. Both victims signed the back of the photograph after picking it out of the lineup, and shortly before trial they were shown the back of the photograph again in order to identify their signatures, but "did not get a good look at" the picture. Because Barron was in the hospital and was an unusually tall man, a physical lineup was not held.

1. Appellant filed a motion to suppress the photographic identification evidence which was denied at a pretrial hearing. The denial of this motion comprises the basis for enumerations of error 1, 2 and 4. It is contended that because Nichols had been drinking (the usual two beers), because Nichols had been beaten in the face and eyes, because Moses' glasses were broken and a pillow placed over her head, because the victims viewed the photographic display in each other's presence and Nichols observed Moses select Barron's picture prior to his viewing, because Barron was wearing a bright red shirt and only one other man in the photographic display was in a bright shirt, and because both victims saw Barron's photograph again just prior to trial and the in-court identification, the identification procedure was impermissibly suggestive and thus unconstitutional. See *Goswick v. State,* 150 Ga. App. 279 (1) (257 SE2d 303) (1979).

Under the totality of the circumstances, however, an identification may be reliable "even though the confrontation procedure was suggestive." Neil v. Biggers, 409 U. S. 188, 199 (93 SC 375, 34 LE2d 401) (1972). We conclude that in the instant case when the particular factors pointing to suggestiveness are considered, the identifications were not " 'all but inevitable' under the circumstances" so as to violate due process. Neil v. Biggers, supra, at p. 197.

Here, as in *Heyward v. State,* 236 Ga. 526, 529 (1) (224 SE2d 383) (1976), "(1) The witnesses had opportunity to view the criminal at the time of the crime, considering both the amounts of time involved and light available.

"(2) The witnesses' attention was focused on the robbery. They were its victims. Only two persons unknown to them were present, the robbers. [Cit.]

"(3) The prior descriptions given by the witnesses were only

general in nature and [did not mention appellant's mustache as shown in the photograph] . . .

"(4) The [two] witnesses were certain of their pre-trial identifications and at trial that certainty remained . . .

"(5) Less than a week elapsed between the robbery and the [photographic display]." Accord, *Redd v. State,* 154 Ga. App. 373 (2) (268 SE2d 423) (1980); *Johnson v. State,* 150 Ga. App 405 (1) (258 SE2d 22) (1979); *Goswick v. State,* 150 Ga. App. 279 (2), supra.

" '(I)f the judge does not find as a matter of law both that the picture spread was impermissibly suggestive *and* that there is a substantial likelihood of irreparable misidentification, the in-court identification may be put before the jury.' [Cits.]" *Payne v. State,* 233 Ga. 294, 299 (210 SE2d 775) (1974); *Bradley v. State,* 152 Ga. App. 902 (264 SE2d 332) (1980). Considering the totality of the circumstances here, we cannot say that there was a substantial likelihood of irreparable misidentification; accordingly, the trial judge correctly admitted the in-court identification.

2. On direct examination of a detective the district attorney asked him if he could tell when the photograph of Barron used in the display was taken. The witness replied that he could not without removing the tape to see the date. Counsel for appellant moved for mistrial on the ground that the district attorney was leading the witness into placing the appellant's character in issue and enumerates as error the denial of that motion. "This was a relevant, material question and this court has held that '(w)here evidence is relevant and material, it is not objectionable merely . . . because its effect is incidentally to put the defendant's character in issue. (Cits.)' [Cits.] Thus, even if the question incidentally put the appellant's character in issue it was not error for the trial judge to allow the question and answer." *Bowles v. State,* 155 Ga. App. 753 (272 SE2d 595) (1980). " 'The picture of a defendant with an identifying number does not indicate that the defendant was guilty of any previous crime and does not place his character in issue.' " *Anderson v. State,* 152 Ga. App. 268, 269 (2) (262 SE2d 560) (1979).

3. Appellant's argument that his motion to suppress the gun and holster from evidence was erroneously denied because his arrest and detainment were unlawful is unavailing. "Code Ann. § 68-1707 provides how motor vehicles used in patrolling traffic or in making arrests for traffic violations shall be marked." *Clayton v. Taylor,* 223 Ga. 346, 349 (155 SE2d 387) (1967). It does not, as urged by appellant, invalidate a legal arrest made by an on-duty police officer driving an unmarked patrol car. Because of Barron's erratic driving and physical condition, the officer was authorized to stop the car and

search him. Gustafson v. Florida, 414 U. S. 260 (94 SC 488, 38 LE2d 456) (1973); *Stoker v. State,* 153 Ga. App. 871 (1) (267 SE2d 295) (1980). In any event, the pistol was not recovered by a search of the car but when appellant pulled it from his holster and threatened the officers with it.

4. The standard charge given by the trial court on reasonable doubt was full and complete and was not subject to the appellant's objection of harmful error in the use of the language "may be innocent." *Perry v. State,* 139 Ga. App. 705, 706 (2) (229 SE2d 519) (1976). Appellant's requested charge was merely cumulative of the instructions given. "A new trial is not required where the charge as given covers substantially the same rules of law." *Blount v. State,* 147 Ga. App. 742 (250 SE2d 191) (1978).

*Judgment affirmed. McMurray, P. J., and Banke, J., concur.*

DECIDED JANUARY 20, 1981 —

John T. Chason, for appellant.
Lewis R. Slaton, District Attorney, Margaret V. Lines, Joseph J. Drolet, Thomas W. Hayes, Assistant District Attorneys, for appellee.