**Robert L. JONES, Plaintiff–Appellant,**

v.

**Lanson NEWSOME,
Defendant–Appellee.**

No. 86–8297.

United States Court of Appeals,
Eleventh Circuit.

May 27, 1988.

C. Gordon Statham, (court appointed), Decatur, Ga., for plaintiff-appellant.

Paula K. Smith, Susan Boleyn, Asst. Attys. Gen., Atlanta, Ga., for defendant-appellee.

Before RONEY, Chief Judge, TJOFLAT, Circuit Judge and CLEMON *, District Judge.

CLEMON, District Judge:

In this action, Robert Lee Jones appeals the denial of his habeas corpus petition. He was convicted of murder by a Fulton County, Georgia jury in 1982 and sentenced to a term of life imprisonment, which he is

---

* Honorable U.W. Clemon, U.S. District Judge for the Northern District of Alabama sitting by des-  ignation.

presently serving. The Georgia Supreme Court subsequently affirmed his sentence on direct appeal. *Jones v. State*, 251 Ga. 361, 306 S.E.2d 265 (1983). Guided by the "presumption of correctness" of the factual findings made by the Georgia trial and appellate courts, 28 U.S.C. Section 2254(d), and upon our independent review of the record as a whole, we affirm the district court.

## I.

The only colorable claim asserted by Jones in this appeal[1] is that his in-court identification by four witnesses at trial was tainted by impermissibly suggestive pretrial identification procedures. He contends that the trial court should have excluded all identification testimony, relying on the seminal case of *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

## II.

On March 26, 1982, at approximately 1:00 P.M., Frances Tutt Davis was fatally stabbed by a man wielding an icepick as she waited to board a MARTA train in downtown Atlanta. The assailant fled the scene. There were six witnesses to the murder.

Two of the witnesses were standing approximately two feet behind the victim and her assailant. They were unable to see the assailant's face; but they described him as a black male, approximately six feet tall, weighing about 200 pounds, and limping on his right leg. At trial, those witnesses were unable to identify Jones as the assailant.

The remaining four witnesses "... viewed [Jones] in a well-lighted area, at close range, for time spans varying from several seconds to a few minutes. One of

the witnesses even spoke to [Jones] and attempted to push him away as he was stabbing the victim." *Jones, supra,* at 266.

Roughly a week and a half after the murder, the police showed a photographic spread consisting of six color photographs to the four witnesses. All four identified Jones as the possible assailant.

A composite drawing based on the description of the assailant by one of the witnesses was shown to him and two other witnesses. Each of these witnesses agreed that the composite drawing accurately portrayed the assailant.

Three of the four witnesses were shown a second photographic spread a few weeks after they viewed the first photographic spread. It consisted of six black and white photographs, including that of Jones. Jones' photograph, aside from being the only one shown in both photographic spreads, was markedly different in physical appearance from the other black and white photographs. The witnesses predictably identified Jones.

Two of the three witnesses who had seen the second photographic array were also shown a single photograph of Jones and three other men in prison garb. These witnesses identified Jones.

A live line-up was held at the Atlanta City Jail on June 17, 1982. The three witnesses present at this line-up again identified Jones as the assailant.

Although Jones' counsel filed a motion to suppress the identification evidence prior to trial, she elected, as a matter of trial strategy, to waive a pretrial suppression hearing.

At trial, after the witnesses had made their in-court identifications of Jones, the defense counsel moved for a mistrial based on the admission of all of the identification evidence. The trial judge recognized that "the second photo array and the subse-

---

1. Jones also urges that he was denied the effective assistance of counsel at trial and on direct appeal, that he was denied a fair trial by the interjection of his character into issue and the admission of the testimony of a rebuttal witness who had sat through the trial, that the evidence did not establish his guilt beyond a reasonable doubt, and that prosecutorial misconduct de-

nied him a fair trial. We have carefully reviewed the factual findings of the Georgia courts on each of these issues, and find them to be supported by the record as a whole. The presumption of correctness to which the findings are entitled bars the reconsideration of these claims by the federal courts.

quent physical lineup may well have enhanced (sic) [in an] impermissible fashion...."; and he offered to instruct the jury to disregard those portions of the identification testimony. Counsel then withdrew her objection to this evidence, while maintaining her position that admission of the total evidence required the declaration of a mistrial.

### III.

The power of federal courts to make factual findings in habeas corpus cases is limited:

> In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, ... 28 U.S.C. Section 2254(d).

This presumption is controlling unless one or more statutorily defined circumstances are found to exist,[2] or "the record in the State court proceeding, considered as a whole, does not fairly support [the] factual determination, ..." *Id.* The burden is on the habeas corpus petitioner to prove that the State court's factual determination was erroneous.

■ Where suggestive pretrial confrontations may have created a substantial likelihood of irreparable misidentification at trial, the core question is whether under the totality of the circumstances, the in-court identification was reliable. The factors to be weighed in arriving at the ultimate conclusion are (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *Neil v. Biggers*, 409 U.S. at 199–200, 93 S.Ct. at 382.

While the ultimate conclusion as to the reliability of identification evidence is a mixed question of law and fact not governed by the Section 2254(d) presumption, each of the *Neil v. Biggers* factors is considered an issue of fact governed by the presumption. *Sumner v. Mata*, 455 U.S. 591, 597, n. 10, 102 S.Ct. 1303, 1307 n. 10, 71 L.Ed.2d 480 (1982).

The Georgia courts' factual findings on each of the *Biggers* factors are entitled to the presumption of correctness, for the record as a whole fairly supports each of them, and none of the other exceptions enumerated in Section 2254(d) applies.

■ The district court found that although the second photographic array and the photograph of Jones with three other prisoners were impermissibly suggestive, nonetheless the witnesses had an independent basis for their in-court identifications of Jones. In so doing, the court reconstructed the implicit finding of the Fulton County Superior Court to that effect. This reconstructed finding is likewise entitled to the presumption of correctness. *Fike v. James*, 833 F.2d 1503, 1506 (11th Cir.1987). To the extent that Jones argues that the admission into evidence of these impermis-

---

**2.** The circumstances which must be shown are, alternatively,

    (1) that the merits of the factual dispute were not resolved in the State court hearing;

    (2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

    (3) that the material facts were not adequately developed at the State court hearing;

    (4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

    (5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;

    (6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or

    (7) that the applicant was otherwise denied due process of law in the State court proceeding.

sibly suggestive procedures improperly enhanced the witnesses' credibility in the eyes of the jury, that argument must be rejected since the defendant elected, as matters of trial strategy, to waive both a suppression hearing and a curative instruction.

### IV.

Based on the factual findings of the Georgia courts, the inescapable legal conclusion is that under the totality of the circumstances, the in-court identification of Jones by the witnesses at trial was not unreliable.

The state court's factual findings also preclude relief on any of the other grounds raised by appellant. We therefore AFFIRM the judgment of the district court.