**Kenneth Roger BARRON, Petitioner,**

**v.**

**Lanson NEWSOME, Warden, Respondent.**

**Civ. A. No. 1:87–CV–2638–JOF.**

United States District Court, N.D. Georgia, Atlanta Division.

Nov. 2, 1988.

Kenneth Roger Barron, Reidsville, Ga., pro se.

Susan Virginia Boleyn and Mary Beth Westmoreland, Office of State Atty. Gen., Atlanta, Ga., for respondent.

## ORDER

FORRESTER, District Judge.

This matter has been submitted to the court on Magistrate Dougherty's report and recommendation which recommends that petitioner is not entitled to habeas corpus relief and that the petition should be denied and the complaint dismissed. Petitioner has filed objections to this report and recommendation.

Petitioner seeks habeas corpus relief under 28 U.S.C. § 2254 from a life sentence imposed upon him by the Superior Court of Fulton County, Georgia, on March 10, 1980, following his conviction for two counts of armed robbery. The trial testimony revealed that one victim, Jimmy Nichols, was picked up by two white men and a white woman as he was walking down the street on January 8, 1980 around one thirty or two o'clock in the morning. One man had a gun. The two men forced him to lead them to his aunt's house, where he was staying. They forced their way into the house when the aunt, Pauline Moses, opened the door. The tall man beat Mr. Nichols with the gun and put him under the bed. The short one threw Mrs. Moses on the bed, covered her head with a pillow and beat her, breaking her glasses. They stole a billfold, some cash and two rings worn by Mrs. Moses.

Two days after the robbery the two victims went to the police station. They were seated at the opposite sides of two tables that had been pushed together, facing each other approximately six to eight feet apart. Each viewed a set of approximately ten photographs which included one of the petitioner. Independently, each chose the photograph of the petitioner and then each signed the back of the photograph. Both identified the petitioner at trial as the tall robber.

### I. *Identification Issues*

Petitioner's first objections are to the magistrate's conclusion that petitioner does not merit relief for grounds one, two and four of his petition. These three grounds allege that 1) the circumstances of his pretrial identification procedures were so impermissibly suggestive that there was a substantial likelihood of misidentification; 2) petitioner was denied due process and right to counsel because of post-indictment showing of photographs of petitioner to the witnesses; and 3) the trial court made an erroneous decision in determining that the totality of the circumstances of the identification was constitutionally permissible.

Petitioner objects on several grounds. First, petitioner says that the witnesses' original descriptions did not include a mustache, though all the pictures shown to them in the identification process did have a mustache. Sergeant Lee, the officer who conducted the photographic display, testified in the pre-trial hearing on petitioner's motion to suppress that the identification which he used as the basis for his choice of pictures for the display did not mention a mustache. Transcript, p. 37. He chose photographs of people who looked similar to petitioner, including shoulder length hair and a mustache. *Id.* at 43. Mrs. Moses testified at the suppression hearing that the tall robber did not have a mustache. *Id.* at 53. Mr. Nichols testified at trial that the tall robber did not have a mustache at the time of the robbery. *Id.* at 143. There was also testimony at trial that the petitioner did have a mustache on the day the robbery occurred. *Id.* at 220, 227. Both witnesses testified that they were sure the photograph was the robber. *Id.* at 55, 64. The inconsistencies between the descriptions and the photographs do not show how the photographic identification procedures were impermissibly suggestive. All the photographs, including the one of the petitioner, had mustaches, and all were similar in appearance to the petitioner. The fact that the petitioner had a mustache in the photograph did not tend to suggest to the witnesses that they should choose that picture. The inconsistencies, however, may implicate the reliability of the witnesses' memory of the robber and their ultimate identification.

Petitioner also points out that one of the police officers involved in the photo identification put the photo of a Mr. Walls in the group of pictures shown to the victims. Sergeant Lee testified that he added Walls' picture to the group because he was the owner of the car in which petitioner was driving when he was arrested and because there were two men involved in the robbery. Transcript, p. 32. Petitioner claims that the real owner was a black man named Jimmy. Petitioner has not explained how this is relevant to the suggestibility of the pretrial identification procedures, and the court cannot see how this is relevant.

■ Petitioner further objects because both witnesses were in the same room at the time of their viewing of the set of photographs. The two witnesses were seated at opposite sides of two tables that had been pushed together so that they were six to eight feet apart. Transcript, p. 31. During the identification procedure while Mrs. Moses was looking at the photographs Mr. Nichols "rose up out of his chair" to look at the picture chosen by the other witness. *Id.* at 31. Petitioner contends this was suggestive because he could see which photograph she chose. When the witness rose up in his chair, the officer supervising the identification told him not to look at what the other witness was doing.[1] *Id.* Both witnesses testified at the pre-trial hearing and at trial that they could not see what photograph the other one chose. *Id.* at 57, 64, 66, 152. The procedure was suggestive to the extent that each could see that the other had picked a photograph. However, the record as a whole reveals that the witnesses were not able to see which picture the other chose. Though the witnesses were in the same room and facing each other when they viewed the photographs, the procedure was not so impermissibly suggestive that a substantial likelihood of misidentifi-

cation was created. *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). The risk of misidentification was slight.

■ Petitioner also objects to the magistrate's conclusion that the identification procedure did not violate due process because a police sergeant showed the petitioner's photograph from the identification session to the witnesses in the judge's chambers while the pretrial identification hearing was in progress. The prosecutor stated during argument in the pretrial hearing that he was simply reviewing the evidence with the witnesses, to see if they could identify the exhibits. Transcript, p. 81. The trial court ruled that this incident could be used to question the credibility of the identification, but would not be the basis for the motion to suppress the prior identification. *Id.* at 82. The police officer testified at trial that someone from the prosecutor's office showed the back of the photograph to the witnesses in order to verify their signatures, *id.* at 192, 93 S.Ct. at 378, but that they did not get a good look at the front of the picture, *id.* at 193, 93 S.Ct. at 379. This was not an identification session where the witnesses were again asked to choose a photograph out of a set. The record supports the conclusion that the witnesses were simply shown the back of the photograph to verify their signatures. No due process or sixth amendment rights were implicated.

Finally, petitioner contends that the five factors set out in *Neil v. Biggers,* 409 U.S. at 188, 93 S.Ct. at 377, for determining whether an in-court identification was reliable, were not met. Even if the pre-trial identification was suggestive and may have created a substantial likelihood of misidentification, it still may not violate due process if under the totality of the circum-

---

1. At the pre-trial hearing on direct examination of the officer who conducted the photographic display, the prosecutor asked:

Q. Could he see the pictures she picked out?
A. No, sir.
Q. How can you say that?
A. Because he raised up in his chair when she started looking at the pictures and I told

him at that point that I didn't want him looking, that he would look after she finished.
Q. How far away was she from him?
A. Across the length of two tables, six, eight feet.
Transcript, p. 31.

stances the in-court identification was reliable. *Neil v. Biggers,* 409 U.S. at 188, 93 S.Ct. at 377; *Jones v. Newsome,* 846 F.2d 62 (11th Cir.1988). The factors to be considered are 1) the opportunity of the witness to view the criminal at the time of the crime; 2) the witness' degree of attention; 3) the accuracy of the witness' prior description; 4) the level of certainty demonstrated by the witness at the confrontation; and 5) the length of time between the crime and the confrontation. *Neil,* 409 U.S. at 199–200, 93 S.Ct. at 382; *Jones,* 846 F.2d at 64.[2] The Georgia Court of Appeals addressed these five factors, as did the trial court and the magistrate.

First, petitioner contends that the witnesses could not have positively identified him, because of the lack of time or bad viewing conditions at the time of the crime. The transcript shows that Mrs. Moses saw the two robbers as they were standing on the porch behind Mr. Nichols. She stated in her testimony that the whole thing was quick, "like lightning almost." Transcript, p. 152. Mr. Nichols saw the two robbers when they stopped in their car to pick him up. They got out of the car in an area where there were streetlights. *Id.* at 130, 139. He stated that they picked him up around 1:40 a.m., *id.* at 138, and that the robbers left the house and Mrs. Moses called the police at about 1:45 a.m., *id.* at 135. He also testified that "it happened in about, I would say thirty seconds." *Id.* at 138.

Second, both witnesses were victims of the crime, and their attention was focused completely on the crime. There was nothing that distracted them from the crime.

Third, the prior description given by the witnesses was general, and was consistent with the appearance of the petitioner. The descriptions, however, did not include a mustache, though there is testimony that the petitioner did have one. Both witnesses testified that the tall robber did not have a mustache.

Fourth, both witnesses were certain at the pre-trial confrontation that the picture they chose was the person who robbed them. Sergeant Lee testified that there was a question in his mind as to whether Mrs. Moses was sure, Transcript, p. 31, but that she went through all the other pictures and "kept coming back" to petitioner's and said that was him. *Id.* at 33. She testified that she recognized it when she first saw it and pushed it aside. *Id.* at 54. She also testified that petitioner's was the only picture that looked like the person who robbed her, and that he was the one. *Id.* at 55. Mr. Nichols picked the photograph quickly, in "two seconds," *id.,* at 64, and recognized the face as soon as he saw it, *id.*

Finally, the time between the crime and the confrontation was two days.

■ In balancing these factors, the in-court identification was reliable. Though Mrs. Moses had only a brief time to see the robbers, she did get a view of them when they entered the house. Mr. Nichols had an opportunity for a good look at both robbers on the street, in the car and in the house over several minutes. The original descriptions were generally accurate, though they did not include the mustache. However, the witnesses' certainty at the

**2.** Each of these factors is considered an issue of fact governed by the presumption of correctness of determinations of factual issues in 28 U.S.C. § 2254(d). *Jones,* 846 F.2d at 64. The presumption does not apply if certain statutory conditions are met, or if the record as a whole does not support the factual determination. *Id.* These conditions include,

    1) that the merits of the factual dispute were not resolved in the state court hearing;

    2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

    3) that the material facts were not adequately developed at the State court hearing;

    4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

    5) that the applicant was an indigent and the State court, in deprivation of his constitutional rights, failed to appoint counsel to represent him in the State court proceeding;

    6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or

    7) that the applicant was otherwise denied due process of law in the State court proceeding.

photographic display demonstrates that the choice of the petitioner's photograph was correct despite the fact that the description did not include a mustache. Finally, the short time period between the crime and the confrontation demonstrates the accuracy of the identification. Taken together, these factors demonstrate that admission of the in-court identification was reliable and did not violate due process even if the photographic display was suggestive. The witnesses had an independent basis for their identification. The conclusions by the trial court and the Georgia Court of Appeals were based on a full and fair hearing and are supported by the record. The magistrate's conclusion that the identification procedure was not impermissibly suggestive and that the in-court identification was properly submitted to the jury is correct. Therefore, petitioner's objections on these grounds are overruled.

## II. *Character Evidence*

Petitioner next objects to the magistrate's findings that relief is not available in this habeas corpus proceeding under the theory that petitioner's character was improperly put into issue during his trial. During the trial, a police officer was allowed to testify as to the date of the photograph taken of petitioner, which happened to be before his arrest on the instant offense. The officer was required to remove a strip of tape on the photograph in order to see the date. This was done outside the presence of the jury. Petitioner alleges that the statement of the date of this photo and the statement by an officer once in the trial that the petitioner was subject to investigation for other robberies impermissibly put his character in issue. The court of appeals held that because the question presented to the witness about the date of the picture was relevant, the evidence was properly admitted even if his character was incidentally put into issue. *Barron,* 157 Ga.App. at 188, 276 S.E.2d 868.

■ In a habeas corpus proceeding based on an allegation of an evidentiary violation, the petitioner must show that the error was of such magnitude as to render the trial fundamentally unfair. *Amadeo v. Kemp,* 816 F.2d 1502 (11th Cir.1987). "In determining whether the admission of prejudicial evidence constitutes a denial of fundamental fairness, a federal court must decide whether the evidence is 'material in the sense of a crucial, critical, highly significant factor.'" *Id.,* at 1504. A state court ruling that the evidence was properly admitted is binding on this court. *Id.* This court has reviewed the record and finds that it was not a crucial, critical or highly significant factor that made the petitioner's trial fundamentally unfair. *Amadeo,* 816 F.2d at 1502. The single statement that the photograph was taken before the petitioner's arrest on this incident does not indicate that he was guilty of this crime. The bulk of the testimony which connected him to this crime was eyewitness testimony from the two victims and testimony of investigating police officers.

■ The second statement which petitioner contends placed his character into issue occurred during direct testimony of Sergeant Lee. The prosecutor asked if Sergeant Lee was aware of petitioner's arrest on January 8, 1980. Sergeant Lee responded, "[j]ust in a vague sense that he had had some trouble with officers and the homicide squad was investigating a case with him, yes, sir." Defense counsel did not object to this statement and did not raise it on appeal. Whether or not review is appropriate in this forum, nevertheless, this one isolated statement was not a crucial, critical, or highly significant factor that led to his conviction. Therefore, no error was committed. Petitioner's objections on these grounds are overruled and no relief is granted.

## III. *Fourth Amendment*

■ Petitioner next complains that the magistrate erred by denying relief for the trial court's denial of petitioner's motion to suppress. Petitioner objects to the magistrate's finding that his fourth amendment claim cannot be used for habeas corpus relief based on *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) by arguing the facts of his arrest. The

petitioner's fourth amendment claim was raised in the trial court on the motion to suppress, Transcript pp. 6–27, and on appeal to the Georgia Court of Appeals. *Barron v. State,* 157 Ga.App. 186, 276 S.E. 2d 868 (1981). When there is an opportunity for full and fair litigation of fourth amendment claims in state court, these fourth amendment claims cannot be used as the basis for relief in a habeas corpus action in federal court. *Stone v. Powell,* 428 U.S. at 465, 96 S.Ct. at 3037. Petitioner has not shown that he was not given an opportunity for full and fair litigation of his fourth amendment claims in state court; therefore, *Stone v. Powell* controls and this court declines to address the petitioner's fourth amendment claims.

### IV. *Reasonable Doubt Instruction*

The petitioner next objects to the magistrate's finding that the trial court's charge on reasonable doubt was sufficient and did not render the trial fundamentally unfair. Petitioner objects by stating that the instruction given by the court was misleading and negative, and two phrases in particular were detrimental to him. The court's review of the record indicates that the instruction was adequate and was not so prejudicial as to amount to a violation of due process which renders the trial fundamentally unfair. *Carrizales v. Wainwright,* 699 F.2d 1053 (11th Cir.1983). Therefore, petitioner's objections on these grounds are overruled.

### V. *Appointment of Counsel*

The last objection petitioner has to the magistrate's report and recommendation is on the magistrate's decision not to appoint counsel. The petitioner objects by stating that he is uneducated, and unknowledgeable about the law, and that the prison where he is incarcerated limits his time in the law library. The court is satisfied that the magistrate was able to address the petitioner's claims fully and fairly with the complete record which was before it. Therefore, the magistrate's decision not to appoint counsel was not incorrect. Petitioner's objections on these grounds are overruled.

In conclusion, petitioner's objections to the magistrate's report and recommendation are overruled. The petition is DENIED and the complaint is DISMISSED.

SO ORDERED.