## A91A1193. GARNER v. THE STATE.
(411 SE2d 503)

BEASLEY, Judge.

Appellant, Robert Michael Garner, was convicted of armed robbery. OCGA § 16-8-41.

The evidence showed that on January 22, 1990, he robbed a convenience store with a handgun. Witnesses Jeff Hughes and 14-year-old Jamie Bennett, who were working at the store when it was robbed, testified that at the time of the robbery appellant was wearing a green toboggan hat. This hat covered his hair, his ears and the

upper part of his forehead, leaving the remainder of his face visible. Appellant walked into the store and immediately brandished the gun. He was in the store for one or two minutes. Although it was night, there were fluorescent lights in the store which kept it well lit. Bennett testified that he was watching the robber "real close" as Hughes was emptying the cash register in compliance with the robber's demand. Both Bennett and Hughes testified they had gotten a good look at the robber. After the robber fled on foot, Bennett and Hughes called police. The police recovered a dark blue toboggan hat approximately 45 to 50 feet from the store, which was consistent with the direction in which the robber fled. Microanalysis showed sufficient similarities between hair found in the cap and appellant's hair samples so as to support a conclusion of common origin.

The day after the robbery, Hughes assisted in compiling a composite sketch of the robber through which appellant was identified as a suspect.

A sheriff's investigator obtained a mug shot of appellant which was approximately three years old. He incorporated it into a photographic array which contained five other mug shots and was shown to Hughes and Bennett on January 30. Hughes was unable to identify the robber. Although Bennett was not "one hundred percent sure about the picture," he identified appellant's photograph as resembling or looking like the robber. All of the photographs depicted white mustachioed males of the same age range; three had hair below their ears and three had shorter hair.

Officer Perry next obtained a recent photograph of appellant and incorporated it into a second photographic array, which he showed to Bennett and Hughes on February 8. Both of them identified appellant as the robber. The investigator testified that Bennett immediately picked out appellant; he "just simply sat up and said, 'That's him that's him, that's him.'" Thereafter, Bennett and Hughes were told each had identified the individual under investigation.

Appellant's photograph was the only one common to both photographic arrays. All photographs in the second array showed white men of the same age range wearing mustaches. Three showed men with hair which did not cover their ears, and two had hair which was of a length to partially cover their ears. Appellant's photograph was the only one showing shoulder length hair. The robber's hair was not seen during the robbery.

On February 14, Bennett identified appellant from a lineup in which appellant was the only individual who had shoulder length hair which covered his ears. One other person had long hair, all were dark-haired white males of approximately the same age group, height, and weight. All were wearing the same prison uniform except one, not appellant, who wore jeans. After viewing the lineup, Bennett identified

appellant as the robber.

At trial, Hughes and Bennett again identified appellant as the robber. They responded in the negative to the inquiry whether there was any uncertainty or doubt as to whether appellant was the robber and whether they would ever forget the face of the robber.

1. Appellant contends that the trial court erred in admitting evidence of the photographic arrays and lineup. He argues that the pretrial identification procedures were impermissibly suggestive and, under the totality of the circumstances, gave rise to a substantial likelihood of irreparable misidentification, *Pack v. State*, 182 Ga. App. 618 (356 SE2d 557) (1987), so that Bennett's and Hughes' identification of appellant at trial was tainted and did not have an independent basis. See *Smith v. State*, 160 Ga. App. 60 (1) (286 SE2d 45) (1981). He also challenges the investigator's statement to Bennett that he had identified the suspect.

As was done in *Pack v. State*, supra at 619, we make no judgment on the first part of the United States Supreme Court's test and apply only the second: whether there was a substantial likelihood of irreparable misidentification after the police have shown witnesses impermissibly suggestive (we assume) photographic arrays or lineups. We consider the appropriate factors, which were listed in *Goswick v. State*, 150 Ga. App. 279, 282 (2) (257 SE2d 303) (1979).

The witnesses viewed the robber at close range in a well-lighted area for one or two minutes; the robber was wearing a toboggan cap which covered only the outer extremities of his face; the witnesses' degree of attention was well focused; both witnesses were certain that appellant was the robber; the witnesses viewed the second photographic array 17 days after the robbery and the lineup 23 days after the robbery. Neither the defense nor the state address the question of whether the witnesses' prior description of the robber was accurate, although it appears to be so from a comparison of the description with the photographs.

"It is not a good practice to indicate to a witness that he has chosen the 'right' person as it could lead to an improper tainting of a subsequent . . . identification in a questionable case. However, whether a subsequent . . . identification is tainted depends on all the circumstances of each case." *Dodd v. State*, 236 Ga. 572, 573 (224 SE2d 408) (1976). This practice of confirming the choice as correct is also disapproved in *Lowe v. State*, 141 Ga. App. 433, 434 (233 SE2d 807) (1977).

Given the certainty with which the witnesses identified appellant, and their opportunity to view him at close range in a well-lighted area, the evidence supports the trial court's finding that the witnesses' identification of appellant was based on their observation of him at the scene of the crime and not on the identification procedures

employed by the police. See *Selbo v. State*, 186 Ga. App. 779, 781 (368 SE2d 548) (1988); see generally *Woods v. State*, 165 Ga. App. 39 (1) (299 SE2d 97) (1983). In these circumstances, " 'such evidence is for the jury to weigh.' " *Pack v. State*, supra at 619.

2. Appellant next contends that the trial court erred in admitting evidence concerning the toboggan hat and the hair samples found in the hat. The argument is that if the witnesses were correct in describing the hat as green, then the blue hat and its contents were not relevant, whereas if the witnesses inaccurately described the hat's color, then the accuracy of their identification of appellant is destroyed.

The trial court did not err in admitting the hat and hair samples and testimony concerning the same, since there was evidence connecting them to defendant and to the scene, thus leaving to the jury whether the hat was worn during the commission of the crime and whether it was appellant who wore it and whether the hair in it was appellant's. See *Heard v. State*, 126 Ga. App. 62, 66 (4) (189 SE2d 895) (1972). The witnesses' testimony that the hat was green rather than blue did not require exclusion of the blue hat nor did it vitiate their identification of appellant as the robber. Bennett said the hat produced at trial could have been the one worn and Hughes said he could have been mistaken about the color. The ultimate issue is the identification of the robber, not the identification of the hat.

*Judgment affirmed. McMurray, P. J., and Carley, P. J., concur.*

DECIDED SEPTEMBER 12, 1991 —
RECONSIDERATION DENIED OCTOBER 23, 1991 — 

*Rafe Banks III*, for appellant.

*Garry T. Moss, District Attorney, T. Russell McClelland III, C. David Gafnea, Assistant District Attorneys*, for appellee.